# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO GIL,<br><br>       Plaintiff,<br><br>  v.<br><br>YATES, et al.,<br><br>       Defendants. | Case No. 1:09-cv-00917 LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Document 77) |

Plaintiff Francisco Gil ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on May 26, 2009. Pursuant to the Court's September 2, 2011, order, this action is proceeding against Defendant J. M. Woodend for violation of Plaintiff's Fourteenth Amendment right to procedural due process.

On January 24, 2013, Defendant filed this Motion for Summary Judgment.[1] Plaintiff filed his opposition on March 18, 2013, and Defendant filed his reply on April 12, 2013.

## I.    LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party:

---

[1] In Defendant's January 24, 2013, notice, filed concurrently with his Motion for Summary Judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

1

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

## II. STATEMENT OF UNDISPUTED FACTS

In opposition to the Motion for Summary Judgment, Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 260(b). Despite receiving a notice of the requirements for opposing summary judgment, Plaintiff did not address Defendant's factual assertions relating to the events at issue.

Plaintiff's opposition is comprised of approximately 40 pages of argument and 340 pages of exhibits, many of which appear to be irrelevant to the issues presented. Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified Third Amended Complaint ("TAC"). Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Plaintiff's opposition is also verified and may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on

facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

Plaintiff was incarcerated at Pleasant Valley State Prison during the events at issue. TAC 1. After he completed his prison sentence, he was deported by Immigration and Customs Enforcement to Mexico, where he currently resides. ECF No. 32.

On January 24, 2007, Plaintiff received a Rules Violation Report ("RVR") for unauthorized possession of a controlled medication. On that date, Correctional Officer Daley, the reporting employee, observed Plaintiff pick up his medication at the medical window. Plaintiff put the medicine into his mouth, took a drink of water as he walked away, and then spit his medication into his cup. Officer Daley ordered Plaintiff to stop and turn over the cup. Officer Daley observed three capsules floating in the water. Woodend Decl. ¶ 6, Ex. A.

On February 1, 2007, pharmacist R. Juliana prepared a RVR-Part C, in which she noted that on January 24, 2007, Plaintiff was found to be in possession of controlled medication. Juliana cites Title 15, Cal. Code Regs. § 3000, which, at the time of the violation, defined "controlled medication" as "any drug, which is prescribed by a physician and is given to an inmate in controlled dosages." Juliana identified the three capsules found in Plaintiff's cup as two 80 mg. capsules of Geodon and one 50 mg. capsule of Diphenhydramine. Pharmacist Juliana concluded that, at no time, should an inmate be in possession of this medication outside the direct supervision of medical staff. Woodend Dec. ¶ 8, Ex. A.

The RVR was reviewed by Sergeant R. Athey, who approved the report by signature dated February 3, 2007. Woodend Decl. ¶ 12, Ex. A. The RVR was then reviewed by Facility C Captain M. C. Davis on February 5, 2007. Captain Davis determined that the RVR should be classified as "serious," and noted a possible credit forfeiture of 121-150 days. Captain Davis also referenced the offense as "B(6)." At the time of the RVR, Title 15, Cal. Code Regs. § 3323(d)(6) (Disciplinary Credit Forfeiture Schedule) classified the "unauthorized possession or control of any controlled substance, including marijuana, or controlled medication in an institution/facility or contract health facility" as a "Division "B" offense" requiring credit forfeiture of 121-150 days. Captain Davis then

referred the RVR for a hearing before a Senior Hearing Officer ("SHO"). Woodend Decl. ¶ 14, Ex. A.

By state law, each RVR must be classified by high-ranking staff as either an administrative rules violation under Title 15, section 3314, or a serious rules violation under Title 15, section 3315. Woodend Decl. ¶ 9. Defendant Woodend was not involved in, and had no authority over, Captain Davis's classification regarding Plaintiff's RVR. Woodend Decl. ¶ 13.

At the time of Plaintiff's 2007 RVR, unauthorized possession of a controlled substance, including controlled medication, was a Division "B" offense with a credit forfeiture of 121-150 days. Woodend Decl. ¶ 15. In later years, after Plaintiff's RVR was adjudicated, changes and updates were made regarding classifications of various offenses, including those for controlled substances and controlled medications. The updates were not retroactive and had no effect on Plaintiff's RVR. Woodend Decl. ¶ 16.

Plaintiff received a copy of the RVR on February 5, 2007, along with a copy of Pharmacist Juliana's Part C report. This was within 15 days of the date of the discovery of the alleged conduct. Woodend Decl. ¶ 17, Ex. A.

On March 1, 2007, Plaintiff appeared before Defendant Woodend for a hearing on the RVR. The hearing was conducted within 30 days of issuance of the pre-hearing copy of the RVR given to Plaintiff on February 5, 2007. Woodend Decl. ¶ 18, Ex. A. At the hearing, Plaintiff acknowledged receipt of the RVR and Part C more than 24 hours prior to the hearing. Woodend Decl. ¶ 19, Ex. A.

Defendant Woodend explained the purpose of the hearing to Plaintiff, as well as his rights. Plaintiff stated that he was in good health and was ready to proceed. Woodend Decl. ¶ 20, Ex. A. Plaintiff did not request witnesses or any additional material/evidence to be presented. The requirements for an investigative employee and/or staff assistant were not met and therefore an assistant was not requested or provided. Woodend Decl. ¶¶ 21-22, Ex. A.

The charge against Plaintiff was read, and he responded, "I do take the meds but I want to take them later cause they make me sleep. They have no value on the yard." Woodend Decl. ¶ 24, Ex. A. Based on Officer Daley's report in the RVR, Pharmacist Juliana's report in Part C and Plaintiff's own admission of guilt, he was found guilty of "possession of controlled medication"

5

1  under Title 15, section 3016(d). As part of his discipline, Pursuant to Title 15, section
2  3323(D)(6)(A), Plaintiff was assessed 121 days of forfeiture credit. Defendant Woodend felt this
3  was appropriate because this was Plaintiff's first offense. Woodend Decl. ¶ 30, Ex. A. Defendant
4  Woodend verbally advised Plaintiff that he would receive a completed RVR with a statement of the
5  findings and disposition, as well as the evidence relied upon and the appeals process. This
6  concluded Defendant Woodend's interaction with Plaintiff. Woodend Decl. ¶¶ 33-34, Ex. A.

7  Subsequently, the RVR was reviewed by Captain Davis and forwarded to Associate Warden
8  Galaviz. Associate Warden Galaviz approved and signed the RVR and a copy of the completed
9  RVR was provided to Plaintiff. Woodend Decl. ¶ 35.

10  According to an August 1, 2005, Memorandum issued by the Director of the Division of
11  Adult Institutions, a CDC Form 115 charging an inmate for "Possession of a Controlled Substance,"
12  based solely on a positive urinalysis test result for marijuana, was to be classified as a Division "F"
13  offense with a maximum credit forfeiture of 30 days. This change in policy was a result of the
14  decision in In Re Dikes, 121 Cal. App. 4th 825 (2004), and California Penal Code section 2932.
15  This memorandum and the resulting modifications were applicable only to inmates who, based on a
16  positive urinalysis test result for marijuana, had been found guilty of possession of a controlled
17  substance and forfeited credits/privileges. Woodend Decl. ¶ 36, Ex. B

18  Defendant Woodend believes that all of his dealings with Plaintiff were legal and
19  appropriate. Woodend Decl. ¶ 38.

20  **III. DISCUSSION**

21  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply
22  of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539,
23  556, 94 S.Ct. 2963 (1974). With respect to prison disciplinary proceedings, the minimum procedural
24  requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between
25  the time the prisoner receives written notice and the time of the hearing, so that the prisoner may
26  prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and
27  reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense,
28  when permitting him to do so would not be unduly hazardous to institutional safety or correctional

1   goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented
2   are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due
3   process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on
4   other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

5   In addition, "some evidence" must support the decision of the hearing officer,
6   Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985), and the evidence must have some
7   indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence"
8   standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the
9   record that could support the conclusion reached. . . ." Hill, 472 U.S. at 455-56 (emphasis added).

10  Here, there is no dispute that Plaintiff received the five minimum requirements set forth in
11  Wolff, and Plaintiff does not make such an argument. Rather, Plaintiff believes that he was
12  disciplined incorrectly, and therefore, by extension, that "some evidence" did not exist to support
13  Defendant's decision.

14  Plaintiff contends that he was charged with, and pled guilty to, possession of a controlled
15  *medication*, but he received discipline commensurate with a conviction for possession of a controlled
16  *substance*. It is undisputed that the RVR charged Plaintiff with "unauthorized possession of a
17  controlled medication." Woodend Decl. ¶ 8, Ex. A. It is also undisputed that Plaintiff pled guilty,
18  and was therefore found guilty of "violating CCR section 3016(d), for the specific act of,
19  POSSESSION OF CONTROLLED MEDICATION." Woodend Decl. Ex. A (emphasis in original).
20  Plaintiff makes no claims that the RVR was incorrect in this regard.

21  It is also undisputed that Plaintiff was assessed a credit forfeiture of 121 days, along with
22  additional punishment. Woodend Decl. Ex. A. The forfeiture was assessed in accordance with Title
23  15, section 3323(d), which, at the time of Plaintiff's hearing, classified the "unauthorized possession
24  or control of any controlled substance, including marijuana, or controlled medication in an
25  institution/facility or contract health facility" as a Division "B" offense. Under this schedule, a
26  Division "B" offense required a forfeiture of credits in the range of 121-150 days.

27  Plaintiff's contention that he should have received punishment commensurate with a
28  Division "F" offense, i.e., 30 days' forfeiture, is a misstatement of the law in effect at the time of his

7

hearing. At the time he received the forfeiture, section 3323 classified the unlawful possession of any controlled substance *or controlled medication* as a Division "B" offense with a related penalty of 121-150 days' credit forfeiture. Contrary to Plaintiff's contention, at the time of his RVR, the punishment range for possession of a controlled medication was the same as that for possession of a controlled substance, and both were Division "B" offenses. Although the law was amended subsequent to Plaintiff's hearing, the changes were not retroactive and did not impact Plaintiff's discipline.

Similarly, to the extent that Plaintiff contends that an August 1, 2005, memorandum required that he be charged with a Division "F" offense, the memorandum dealt exclusively with possession of controlled substance charges "based *solely on a positive urinalysis test result for marijuana…*" Woodend Decl. Ex. B (emphasis in original). The memorandum directed such charges be changed from a Division "B" offense to a Division "F" offense subject to 30 days' credit forfeiture. The change, as explained in the memorandum, was the result of In re Dikes, 121 Cal. App. 4th 825, 833-834 (2004), where the court held that California Penal Code section 2932(a) prevented a credit forfeiture of more than 30 days because the use of marijuana was not a felony or misdemeanor offense in California. Because the plaintiff, who had a positive urinalysis test for marijuana, could not be criminally prosecuted, Penal Code section 2932(a)(4) prevented the imposition of more than 30 days' credit forfeiture. Id.

It is undisputed here that Plaintiff's RVR did not involve a positive urinalysis test for marijuana, and Plaintiff wholly fails to explain why the August 1, 2005, memorandum and resulting changes would have *any* impact on his hearing. Plaintiff's opposition did not address Defendant's argument that the memorandum and resulting changes involved only a specific set of facts, none of which are in play here.

Plaintiff is correct that California Penal Code section 2932, which dictates credit loss based on whether the act can be classified as a felony, misdemeanor, etc., also resulted in changes to other offenses, including the treatment of unauthorized possession of controlled medication. Woodened Dec., Ex. B. The change was described as:

> Unauthorized possession of controlled medication, 3323(d)(6), a Division "B" offense being revised to "Possession of Contraband Medication," a Division "F" offense. NOTE: Medications containing any controlled substances as defined in section 3000 will still be charged as "Possession of a Controlled Substance," 3323(d)(6), a Division "B" offense.

Woodend Decl. Ex. B. Indeed, the current version of Title 15, section 3323(h)(8) states that the "unauthorized possession or distribution of medication (not identified as a controlled substance in section 3000)" is a Division "F" offense with a resulting credit forfeiture of 0-30 days. The fact remains, however, that this was not the text of the section in effect at the time of Plaintiff's sentencing and there is no indication that any changes, aside from those related to positive marijuana urine tests, were retroactive. 15 Cal. Code Regs. § 3323 (2007).

Accordingly, based on the undisputed facts, Defendant Woodend's findings were proper under the Fourteenth Amendment and he is entitled to summary judgment.

## IV.　CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:　**July 22, 2013**　　　　　　　　　　　/s/ *Dennis L. Beck*
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

9